2016R00573/DAG/CM

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Stanley R. Chesler |
| | : | |
| v. | : | Criminal No. 20-____ |
| | : | |
| GIGI KNOWLE | : | 26 U.S.C. § 7206(1) |
| | : | 18 U.S.C. § 2 |

I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, and any challenges based on venue, the Attorney for the United States, under the authority conferred by 28 U.S.C. § 515, for the District of New Jersey charges:

**COUNT ONE**
**(Subscribing to a False Tax Return)**

1. At all times relevant to this Information:

**Individuals and Entities**

a. Defendant GIGI KNOWLE was a resident of Florida and earned income derived from work performed in the United States.

b. Defendant KNOWLE controlled a bank account belonging to KB Time, Inc., a corporation.

c. Company A was a manufacturer of luxury automobiles, primarily sports cars, based in Maranello, Italy.

d. Distribution of Company A's automobiles to the western hemisphere was managed by Company B. Company B was based in

Englewood Cliffs, New Jersey. Company B employed its own Chief Executive Officer ("Company B CEO").

e. Company B supervised approximately 35 franchisees within Company B's geographical area (the "Company B Dealers"). Company B Dealers had to periodically renew their franchises with Company A.

### Company A & the Supercar

f. Company A produced several highly-desired automobile models in small quantities (the "Limited Edition Automobiles"). The Limited Edition Automobiles were usually over-subscribed; that is, more customers wanted to purchase a Limited Edition Automobile than Company A produced. Company A frequently allocated specific Limited Edition Automobiles to its most loyal customers, often customizing elements of the cars to the customers' specifications.

g. Company B executives, including Company B CEOs, had some measure of authority over the allocations of the Limited Edition Automobiles.

h. In or around 2013, Company A announced that it was creating the most exclusive Limited Edition Automobile to date: the "Supercar," limited to 500 units. Each Supercar carried a manufacturer's suggested retail price ("MSRP") of approximately $1.4 million.

i. Company A sought to exercise some control over the aftermarket for the highly-prized Supercars, to prevent speculators from buying Supercars, instead of collectors, as Company A intended.

  j. Accordingly, Company A and Company B established a formula based on various criteria to allocate Supercars to Company B Dealers, and to determine which specific customers would be placed on the "Approved List" to buy a Supercar.

  k. Approved Supercar purchasers signed agreements to not resell their Supercars for 18 months unless the purchaser first offered to sell the Supercar back to the Company B Dealer at fair market value. The Company B Dealers agreed not to resell Supercars for more than the MSRP. If an authorized Supercar purchaser reverted their car back to a Company B Dealer, the Company B Dealers agreed to resell the Supercar to the next authorized purchaser on the waiting list at the original MSRP.

### The Undeclared Funds

2. Defendant KNOWLE received certain funds ("Undeclared Funds") as a commission for assisting in facilitating the sale of a Supercar to a purchaser who was not on the Approved List. The Company B Dealer who sold the misallocated Supercar to the unapproved purchaser sold the Supercar for approximately $1.5 million more than the MSRP.

3. Defendant KNOWLE received the Undeclared Funds into a bank account controlled or accessible to defendant KNOWLE. The Undeclared Funds were income to Defendant KNOWLE, but Defendant KNOWLE failed to report the Undeclared Funds as income on his federal individual income tax returns (the "KNOWLE Returns"). The KNOWLE Returns therefore understated a substantial amount of the income that Defendant KNOWLE had received.

4. On or about May 12, 2016, defendant KNOWLE signed, filed, authorized the transmission of, and caused to be filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return for 2015, on his behalf (the "Tax Return"). The Tax Return stated that defendant KNOWLE's taxable income for calendar year 2015 was approximately $0.00. The Tax Return was signed by defendant KNOWLE and contained a written declaration that it was signed under the penalties of perjury.

5. The Tax Return was not true and correct as to every material matter in that the return did not include Undeclared Funds—namely, approximately $560,000 in taxable income that defendant KNOWLE had received in 2015.

6. On or about May 12, 2016, in the Southern District of Florida, and elsewhere, defendant

**GIGI KNOWLE**

knowingly and willfully made and subscribed a 2015 Form 1040, U.S. Individual Income Tax Return, which return contained and was verified by a written declaration that it was made under penalties of perjury, and which defendant KNOWLE did not believe to be true and correct as to every material matter.

In violation of Title 26, United States Code, Section 7206(1); and Title 18, United States Code, Section 2.

*Rachael A. Honig*
RACHAEL A. HONIG
Attorney for the United States,
Acting Under Authority
Conferred by 28 U.S.C. § 515

CASE NUMBER: 20-

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**GIGI KNOWLE**

# INFORMATION FOR

**26 U.S.C. § 7206(1)**
**18 U.S.C. § 2**

RACHAEL A. HONIG
ATTORNEY FOR THE UNITED STATES,
ACTING UNDER AUTHORITY CONFERRED
BY 28 U.S.C. § 515,
FOR THE DISTRICT OF NEW JERSEY

DARA AQUILA GOVAN
CATHERINE R. MURPHY
ASSISTANT U.S. ATTORNEYS
NEWARK, NEW JERSEY
(973) 645-2700